IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Cynthia L. Payton, | ) | Civil Action No. 8:10-cv-2276 -DCN-JDA |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On June 3, 2005, Plaintiff filed an application for DIB, alleging an onset of disability date of June 19, 2002.[2] [R. 84–89.] The claim was denied initially on December 16, 2005

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] In April 2003, Plaintiff filed an application for DIB, alleging an onset of disability date of June 19, 2002. [R. 22, 115 (no records of the 2003 application were included in the transcript provided to the Court).] An administrative law judge issued a decision that Plaintiff was not disabled. [R. 22.] As explained below, the

[R. 56, 58–60] and was denied on reconsideration by the Social Security Administration ("the Administration") on March 16, 2006 [R. 57, 62–63]. On July 27, 2006, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 68–69], and on January 3, 2008, ALJ Richard L. Vogel conducted a hearing on Plaintiff's claims [R. 386–410]. Plaintiff appeared pro se and confirmed to the ALJ her intention to proceed pro se. [R. 388–89.] Following the hearing, the ALJ ordered a consultative orthopedic evaluation [*see* R. 82–83, 408–09], and Plaintiff was examined by the consultative examiner on April 25, 2008 [R. 367–80]. After receiving the report, the ALJ forwarded the report to Plaintiff for review and comment. [R. 82–83.] On July 22, 2008, ALJ Vogel held a supplemental hearing on Plaintiff's claim, and Plaintiff again appeared pro se. [R. 411–29.]

On August 19, 2008, the ALJ issued his decision, finding Plaintiff not disabled. [R. 22–43.] Specifically, the ALJ found Plaintiff had severe impairments of status post left lower extremity and right shoulder injury. [R. 28, Finding 3.] Additionally, the ALJ found that, while Plaintiff had a history of treatment for tachycardia, asthma, and allergies, these conditions were well controlled with the use of medication, failed to result in any objective limitations, and were, therefore, non-severe impairments. [*Id.*] Further, the ALJ found that, during the period at issue—June 14, 2005 through March 31, 2008[3]—Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; the ALJ specifically

parties dispute the date on which this decision was rendered.

[3] As explained below, the parties dispute the ALJ's application of res judicata to limit the period at issue [R. 23], particularly with respect to the date the ALJ cited as the date of the prior decision—June 14, 2005. The parties do not dispute the ALJ's determination that Plaintiff met the insured status requirements through March 31, 2008. [R. 24.]

considered Listings 1.02 and 1.03. [R. 28–29, Finding 4.] The ALJ found Plaintiff had the residual functional capacity to perform sedentary work with limitations of occasional overhead reaching with the right arm and pushing and pulling, no climbing, and occasional stooping and crawling. [R. 29, Finding 5.] The ALJ also found Plaintiff was unable to perform any past relevant work [R. 41, Finding 6], but under Medical-Vocational Rule 201.28, there were jobs that existed in significant numbers in the national economy Plaintiff could perform [R. 42, Finding 10].

Plaintiff requested Appeals Council review of the ALJ's decision [R. 17–18], but on June 28, 2010, the Appeals Council declined review [R. 5–8].[4] Plaintiff filed this action for judicial review on August 31, 2010.[5] [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff alleges the following errors:

1.    the Appeals Council failed to provide Plaintiff with a complete copy of the record, even after Plaintiff requested the complete record and Plaintiff's counsel notified the Appeals Council the record was obviously incomplete, and failed to extend the time limit to submit additional evidence and arguments, as requested, and without a complete record, it cannot be said that the Commissioner's decision is supported by substantial evidence [Doc. 15 at 11–13; *see* Doc. 19 at 1];

2.    the ALJ misapplied res judicata to Plaintiff's prior claims because the ALJ found Plaintiff's period of disability could not commence until after the date of the prior decision in June 2005, but the prior decision was actually rendered in June 2004, and the ALJ's decision that res judicata applies to any period is not supported by the record [Doc. 15 at 13–15; *see* Doc. 19 at 2];

---

[4] Attorney James Callahan began representing Plaintiff in November 2008. [R. 9–14.]

[5] Plaintiff is now represented by attorney Beatrice Whitten. [Doc. 1.]

3.     the ALJ violated Social Security rules and Fourth Circuit precedent for evaluating opinion evidence by

        (a) giving the opinion of a non-treating consultative physician "controlling weight,"

        (b) failing to accord "controlling weight" to the findings of a treating physician, Dr. Gee, and

        (c) failing to fully explain the weight given to Dr. Gee's opinion

[Doc. 15 at 15–20; *see* Doc. 19 at 2];

4.     the ALJ improperly assessed Plaintiff's residual functional capacity by systematically omitting significant limitations documented in the record without performing a function-by-function assessment and improperly evaluating Plaintiff's credibility, especially with respect to her complaints of disabling pain [Doc. 15 at 20–22; *see* Doc. 19 at 2–3]; and

5.     because Plaintiff had significant nonexertional impairments, the ALJ erred in relying solely on the "Grid" rules and not obtaining the testimony of a vocational expert [Doc. 15 at 22–23; *see* Doc. 19 at 2].

Plaintiff also contends the Court should remand her case under sentence six of § 405(g) to have the ALJ consider medical records from Dr. Jeffrey Santi from September 2008 to October 2009, as well as a July 2010 statement by Dr. Santi. [Doc. 15 at 24.] Plaintiff has submitted the additional records to the Court [Doc. 16] and argues the new evidence is relevant and material because it corroborates the findings of Dr. Gee [Doc. 15 at 25]. Plaintiff contends she has good cause for failing to submit the September 2008 to October 2009 medical records in a prior proceeding[6] because the Appeals Council failed to allow Plaintiff to submit additional evidence before it declined to review the ALJ's decision. [*Id.*]

---

[6] The Appeals Council denied review on June 28, 2010 [R. 5]; therefore, the July 2010 statement could not have been submitted in a prior proceeding.

In response, the Commissioner contends the ALJ's decision is supported by substantial evidence and specifically argues the following:

1.  remand is not warranted to consider a lay witness statement and previously considered or insufficiently identified records allegedly provided by Plaintiff because the same result would be reached on remand [Doc. 18 at 6–7];

2.  the ALJ properly utilized the doctrine of res judicata in consideration of the Commissioner's previous final decision and properly referenced and considered Plaintiff's current application from June 2004 forward [*id.* at 8];

3.  the ALJ properly evaluated the medical source opinions of record [*id.* at 9–12]; and,

4.  the ALJ was not required to use a vocational expert because the ALJ properly determined Plaintiff's "'additional limitations have little or no effect on the occupational base of unskilled sedentary work'" [*id.* at 12–13 (quoting R. 43)].

The Commissioner also contends the case should not be remanded pursuant to sentence six because Plaintiff has failed to demonstrate good cause for not incorporating the new evidence into the record in a prior proceeding or that harm and prejudice resulted from the exclusion of the records from the certified transcript. [*Id.* at 7.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368

F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear

disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor

the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[7]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions.

---

[7]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g., Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

**A.** **Substantial Gainful Activity**

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is

generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

**B.    *Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration

requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D. *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[8] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E. *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[9] 20

---

[8]Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(e)

[9]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a. A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. *Id.*

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II. Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir.

13

1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)).  If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence.  *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See id.* (holding there was sufficient evidence for

the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.  Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.  Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself,

> support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**The ALJ Erred by Relying Solely on the Grids to Find Plaintiff Not Disabled**

Plaintiff contends that, because Plaintiff had significant nonexertional impairments, the ALJ erred in relying solely on the grids and not obtaining the testimony of a vocational expert to determine there were significant numbers of jobs in the national economy Plaintiff could perform. [Doc. 15 at 22–23; *see* Doc. 19 at 2.] Specifically, Plaintiff argues the ALJ should have utilized the testimony of a vocational expert in analyzing the affect on the occupational base of skilled sedentary work caused by Plaintiff's significant nonexertional limitations because the ALJ may not rely on the grids when the claimant's specific vocational profile is not listed or where the claimant suffers from nonexertional limitations. [Doc. 15 at 23 (citing 20 C.F.R. § 404.1569 & Pt. 404, Subpt. P, App. 2, para. 200.00(a)).] The Commissioner contends that sedentary work does not require the ability to climb, kneel, crouch, crawl, or constantly balance, and because Plaintiff's nonexertional impairments do not preclude the full range of sedentary activities on a day-to-day basis, the ALJ properly utilized the grids as a framework for his decision. [Doc. 18 at 12.] For the reasons explained below, the Court is unable to conclude the ALJ's decision with respect to Plaintiff's ability to perform other work is supported by substantial evidence.

The grids consider only the exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his or her disability. *Walker*, 889 F.2d at 49. "Exertional limitations" exist "[w]hen the limitations and

restrictions imposed by [the claimant's] impairment(s) and related symptoms, such as pain, affect only [her] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b). A nonexertional limitation "is a limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not, such as mental retardation, mental illness, blindness, deafness or alcoholism" and is "present at all times in a claimant's life, whether during exertion or rest." *Gory*, 712 F.2d at 930 (footnotes omitted). A nonexertional limitation does not directly affect the claimant's exertional abilities—the ability to sit, stand, walk, lift, carry, push, or pull; rather, nonexertional limitations affect the mind, vision, hearing, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use the fingers for fine activities. *See* 20 C.F.R. § 404.1569a(c). "Thus, it is the nature of the claimant's limitations, not certain impairments or symptoms, that determines whether the claimant will be found to have only exertional limitations or restrictions, only nonexertional limitations or restrictions, or a combination of exertional and nonexertional limitations or restrictions." SSR 96-9p, 61 Fed. Reg. 34,478-01, at 34,481 (July 2, 1996).

Thus, when a claimant suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable, the ALJ may not rely exclusively on the grids to establish that the claimant could perform other work that exists in the national economy. *See Walker*, 889 F.2d at 49; *Coffman*, 829 F.2d at 518 ("When nonexertional limitations . . . occur in conjunction with exertional limitations, the guidelines are not to be treated as conclusive." (citing *Roberts v. Schweiker*, 667 F.2d 1143, 1145 (4th Cir.1981); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a), (d)–(e)(2); 20 C.F.R. § 404.1569)); *Hammond*, 765 F.2d at 425–26 ("[T]he grids inadequately describe[] the

claimant who suffers a disability present in the absence of physical exertion."); 20 C.F.R.
§ 404.1569a(d).   Rather, in those circumstances, the Commissioner has the burden to
prove by expert vocational testimony—not exclusive reliance on the grids—that, despite
the claimant's combination of exertional and nonexertional impairments, specific jobs exist
in the national economy that the claimant can perform. *Grant*, 699 F.2d at 192.

Here, the ALJ concluded his analysis of Plaintiff's residual functional capacity
("RFC") by stating that

> although the degree of claimant's allegations of pain were not
> fully consistent with the record, he accorded the Plaintiff the
> benefit of the doubt and reduced the residual functional
> capacity because of some measure of subjective pain to
> include significant limitations in the amount she could stand,
> walk, lift, carry, reach overhead with the right arm, push/pull,
> climb, stoop and crouch, considering, in particular, the
> relatively minimal exertional requirements of sedentary work as
> further reduced by the various additional limitations within the
> residual functional capacity.

[R. 40.]  The ALJ then determined that, considering Plaintiff's RFC, age, education, and
work experience, the grids directed Plaintiff was not disabled.  [R 42.]  The ALJ specifically
noted,

> If the claimant had the residual functional capacity to perform
> the full range of sedentary work, considering the claimant's
> age, education and work experience, a finding  of "not
> disabled" would be directed by Medical-Vocational Rule
> 201.28.  However, the additional limitations have little or no
> effect on the occupational base of unskilled sedentary work.
> A finding of "not disabled" is therefore appropriate under the
> framework of this rule.

[R. 43.]

The Court is unclear what the ALJ meant—the ALJ's conclusion appears to acknowledge the presence of exertional and nonexertional limitations[10] which restrict Plaintiff from performing the full range of sedentary work—stating, "If the claimant had the residual functional capacity to perform the full range of sedentary work . . ." [R. 43], which implies Plaintiff did not have such RFC. As explained above, a finding that Plaintiff was unable to perform the full range of sedentary work would preclude exclusive reliance on the grids. *See, e.g.*, *Walker*, 889 F.2d at 49. However, the ALJ found Plaintiff's "additional limitations" had "little or no effect on the occupational base" and concluded Plaintiff was not disabled pursuant to grid rule 201.28. [R. 43.] The ALJ provided no reasoning for his assertion that Plaintiff's "additional limitations" had "little or no effect on the occupational base," and the Court has found nothing in the ALJ's decision explaining Plaintiff could perform the full range of sedentary work or that Plaintiff's nonexertional limitations were insignificant.

Further, the record indicates Plaintiff had nonexertional limitations such as mild limitations in social functioning, concentration, and persistence [R. 189, 254, 257]—which were mentioned [R. 33] but not discussed by the ALJ—as well as memory problems [R. 251, 259] and nonexertional pain [R. 218–30, 235–36, 241, 250, 252, 254, 262, 266–67, 272–73, 275, 280–82, 286–87, 293–95, 297, 327, 346–48, 350–51, 353, 362–63, 365–67, 398–400, 403, 407, 416–17].[11] While the courts have recognized that not every

---

[10] As to exertional limitations, the ALJ noted Plaintiff was restricted in the amount she could stand, walk, lift, carry, push, and pull. [R. 40.] As to nonexertional limitations, the ALJ noted Plaintiff was limited in her ability to reach overhead, climb, stoop, and crouch. [*Id.*]

[11] The Court notes Plaintiff routinely complained of pain to her physicians, physical therapists, and others evaluating her physical and psychological abilities, as documented in the above record citations. Plaintiff was noted to have chronic pain syndrome [*see, e.g.*, R. 293], which had some psychological impact [*see, e.g.*, R.

nonexertional limitation or malady rises to the level of a nonexertional impairment so as to preclude reliance on the grids, the proper inquiry is "whether a given nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984). There is no discussion in the ALJ's decision regarding the effect of these nonexertional limitations on Plaintiff's ability to perform work within a particular grid category. For these reasons, the Court cannot conclude the ALJ's decision with respect to Plaintiff's ability to perform other work is supported by substantial evidence, and accordingly, the Court recommends the Commissioner's decision be reversed and remanded.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly consider the combined effects of Plaintiff's alleged impairments is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations

---

266–67] and tried various medications for relief but was unable to tolerate the medications, except for prescription Motrin and Baclofen [*see, e.g.*, R. 272, 417]. As a result, the Court finds the ALJ's treatment of Plaintiff's allegations of pain to be disingenuous. [*See* R. 36 ("[I]n spite of her allegations of disabling pain, [Plaintiff] has not sought additional treatment including biofeedback or treatment from a pain clinic. . . . [Plaintiff] does not regularly take narcotic pain-relieving medications and reported she uses over-the-counter medications (Extra Strength Tylenol and Motrin) for pain mangement.").] As directed below, the ALJ, upon remand, should carefully consider Plaintiff's RFC with respect to her allegations of disabling pain.

of error by the ALJ.[12]   However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 10, 2012
Greenville, South Carolina

---

[12] While the Court finds Plaintiff's argument regarding the ALJ's application of res judicata is likely without merit, the ALJ should, upon remand, ensure his decision is based upon a complete record and a proper determination of whether res judicata applies to Plaintiff's claim.  The previous ALJ decision of 2004 was not a part of the record before this Court, and there is some evidence in the record that ALJ Vogel did not have the 2004 decision before him [R. 392, 419–20; *but see* R. 405 (stating the ALJ did not have the prior decision at hand but that he could get it because it was "in the system")].  However, the Court notes that the ALJ's reference to the "June 13, 2005" denial of Plaintiff's claim was likely a typographical error because the ALJ later notes the prior decision was issued on June 14, 2004 [R. 31], the ALJ considered medical evidence from July 2004 on [R. 31–33], and the ALJ discussed with Plaintiff at her hearings that the prior decision was issued in 2004 [R. 392, 419–20].  Consequently, the Court finds there is evidence in the record indicating the 2004 decision was before the ALJ and that the ALJ mistakenly referred to the prior decision as issued in 2005, but the Court hesitates to conclude the ALJ properly applied res judicata because there is also evidence indicating the ALJ did not have the 2004 decision before him.  Accordingly, the Court recommends that, upon remand, the ALJ should ensure his decision to apply res judicata is properly supported.